UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL STOCKDALE,<br><br>            Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:21-cv-0504-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 19, 20.) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security again denying her application for Disability Insurance Benefits under Title II of the Social Security Act, after remand by a sister district court.[1]  In the motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") improperly evaluated the medical opinion evidence and failed to support her Step 4 and Step 5 determinations with substantial evidence.  The Commissioner filed a cross motion for summary judgment in opposition; and plaintiff replied.

For the reasons stated below, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1]  This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 9, 10, 16.)

1

I. **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

This is plaintiff's second district court appeal of the Commissioner's decision to deny her application for Disability Insurance Benefits ("DIB") for the period from July 2, 2013, through June 30, 2016.

In November 2014, plaintiff applied for DIB, alleging an onset date of July 2, 2013. (See Administrative Transcript ("AT") 188-91, electronically filed at ECF No. 13.) Plaintiff claimed disability due to anxiety, affective disorder, post-traumatic stress disorder ("PTSD"), irritable bowel syndrome ("IBS"), and anemia, among other things; and she later alleged neck, back, and hip pain as well. (AT 220, 267, 277, 286.) Plaintiff's application was denied initially and upon reconsideration. (AT 93, 108.) Plaintiff, aided by the same attorney representing her in this appeal, sought review of these denials with an ALJ. (AT 124-25.) After a hearing, the ALJ issued a June 1, 2017 decision finding plaintiff not disabled. (AT 15-27, "2017 ALJ Decision.") The Appeals Council denied plaintiff's request for review (AT 1-5), and she filed a civil action in the Northern District of California seeking judicial review of the Commissioner's decision.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

(Stockdale v. Berryhill, N.D. Cal. Case No. 18-cv-04561-SVK.)

In August 2019, the district court issued an order remanding the case to the agency because the ALJ failed to give sufficient reasons for rejecting portions of the medical opinions of plaintiff's treating physician and the state agency psychological consultants. Stockdale v. Berryhill, 2019 WL 3859142 (N.D. Cal. Aug. 16, 2019) ("Remand Order"). The Appeals Council, in turn, vacated the 2017 ALJ Decision and remanded the case to the ALJ to take any further action needed to complete the administrative record and issue a new decision. (AT 673-75.)

The ALJ held a new hearing on August 4, 2020, where plaintiff testified further about her symptoms, a Medical Expert testified about her mental limitations, and a Vocational Expert ("VE") testified regarding jobs for someone with plaintiff's mental and physical limitations. (AT 612-72.)

On November 18, 2020, the ALJ issued a decision again determining that plaintiff was not disabled during the alleged period of disability. (AT 502-604.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity during the alleged period of disability. (AT 594.) At step two, the ALJ found plaintiff's anxiety, affective disorder, PTSD, IBS, and anemia were all severe impairments; and that her other claimed impairments were non-severe. (AT 595-96.) At step three, the ALJ determined plaintiff was not disabled under the listings for either physical or mental impairments. (AT 596-98, citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then determined plaintiff had the Residual Functional Capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), but with numerous exceptions that:

> [s]he can stand or walk 4 hours and sit 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, occasionally balance and occasionally stoop and kneel. She can rarely climb ladders, ropes or scaffolds. She should avoid concentrated exposure to workplace hazards, such as heights and hazardous machinery. Mentally, she can perform moderately complex tasks on a habitual basis (i.e., she is able to perform semiskilled routine work) in a stable work setting. She is precluded from operating fast moving or dangerous machinery as a regular part of her job duties. She cannot be in charge of safety related operations (i.e., she cannot perform tasks that require visual vigilance to ensure the safety of others). She cannot perform fast-

3

paced work, such as assembly line work.

(AT 598.)

At step four, based on this RFC and the VE's testimony, the ALJ concluded that plaintiff was capable of performing her past relevant work as an outpatient clerk and an insurance clerk as generally and actually performed. (AT 602-03.) In addition, the ALJ proceeded to make an alternative finding at step five that there were still a significant number of jobs available to plaintiff in the national economy in representative occupations such as: mail room clerk, laundry sorter, and collator. (AT 603-04.) Thus, the ALJ once again found plaintiff was not disabled for the relevant period. (AT 604.)

Plaintiff filed no exceptions to the ALJ's decision, and the Appeals Council did not independently assume jurisdiction; therefore the ALJ's new decision became the final decision of the Commissioner. See 20 C.F.R. § 404.984(d). Plaintiff then filed this action requesting review of the ALJ's new decision,[3] and the parties each moved for summary judgment. (ECF Nos. 1, 19, 20.)

**II.   LEGAL STANDARD**

The court reviews the agency's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

///

---

[3]  Plaintiff filed this action in this court, rather than in the Northern District of California where she appealed the 2017 ALJ Decision, because she now resides in Solano County.

## III. DISCUSSION

Plaintiff argues that the ALJ (1) again gave insufficient reasons for rejecting the medical opinions of plaintiff's treating physician and two state agency psychological consultants, and (2) reached Step 4 and Step 5 determinations that were not supported by substantial evidence.[4] (ECF No. 19.1 at 6, 15-22.) Plaintiff requests that the court reverse the ALJ's decision and remand for an award of benefits, or in the alternative remand for further administrative proceedings. (Id. at 22-24.)

### A. The ALJ's Evaluation of the Medical Opinions

#### 1. Legal Standard

For disability claims filed before March 27, 2017, the case law and regulations establish a three-tiered hierarchy of standards for reviewing an ALJ's evaluation of medical opinions given by physicians.[5] Woods v. Kijakazi, 32 F.4th 785, 789 (9th Cir. 2022). At the top, the opinions of those who treat the claimant and have an ongoing relationship with her (treating physicians) are entitled to "substantial weight." Id. (quotation omitted); see 20 C.F.R. § 404.1527(a)(2). In the middle tier, those who examine but do not treat the claimant and do not have an ongoing relationship with her (examining physicians) are entitled to less weight than a treating physician but more weight than a non-examining physician. Id. (citing 20 C.F.R. § 404.1527(c)(1). "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise, and the reasons must be supported by substantial evidence."[6] Id. (quoting Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)). Finally, in the bottom tier, those

---

[4] Plaintiff's brief also lists in its "Statement of the Issues" headings challenging the ALJ's consideration of the testimony by plaintiff and her boyfriend (ECF No. 19.1 at 6); however, the brief includes no substantive argument on those two issues, which the court suspects to be vestiges of counsel's opening brief from the prior appeal of the 2017 ALJ Decision.

[5] Plaintiff filed her application for benefits in 2014. (AT 188-91.)

[6] The Commissioner suggests that the ALJ need only give "good reasons" for rejecting a treating physician's opinion, under 20 C.F.R. § 404.1527(c)(2). (ECF No. 20 at 5.) That is not the standard applied to pre-March 27, 2017 claims under current Ninth Circuit law, and this court is bound by circuit precedent.

who neither treat nor examine the claimant but "only review the record" (non-examining physicians) are given the lowest weight. Id. (quotation omitted). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

A common type of non-examining physician found in social security cases are the state agency medical or psychological consultants ("reviewing physicians") who review the claimant's disability application and supporting medical records at the initial application and reconsideration stages. These reviewing physicians are "highly qualified . . . experts in Social Security disability evaluation," whose findings the ALJ "must consider." 20 C.F.R. § 404.1513a(b)(1). Unless the ALJ "gives controlling weight to a treating source's medical opinion" the ALJ must explain the weight given to opinions of state agency consultants. 20 C.F.R. § 404.1527(e).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012–13. The ALJ does not need to recite the reasons for rejecting opinion evidence, so long as there are inferences that can be drawn from the record. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

### 2. Evaluation of Opinion by Treating Physician Dr. Anita Heart

In determining plaintiff's RFC, the ALJ gave "little weight" to the opinions that plaintiff's treating physician, Dr. Anita Heart, provided in a September 2015 Physician's Medical Source Statement form. (AT 601; see AT 587-90.) In reviewing plaintiff's appeal of the 2017 ALJ Decision finding her not disabled—wherein the ALJ also gave little weight to much of Dr. Heart's 2015 opinion—the district court found that substantial evidence supported the ALJ's rejection of several portions of Dr. Heart's opinions, but that the ALJ erred by failing to give any specific reasons for rejecting Dr. Heart's opinion that plaintiff was likely to miss more than four days of work per month because of her impairments or treatment. Id. at *4-6.

In the post-remand decision being appealed here, the ALJ stated that Dr. Heart's opinion "is not consistent with or supported by the evidence, including her own treatment notes and the claimant's reported activities." (AT 601.) The ALJ found "no evidence that any of the claimant's impairments would significantly limit her ability to sit, stand, or walk or ability to look up, down, to her left or to her right"; and "no objective evidence that indicates the claimant's physical and mental limitations would result in her missing more than 4 days [of work per month]." (Id.)

It is difficult to understand on what grounds exactly plaintiff is challenging the ALJ's evaluation of Dr. Heart's opinion in this appeal. Plaintiff begins by presenting the general principle that a doctor's treatment notes recording a plaintiff's report of mental impairments should not be rejected simply because they are based on the plaintiff's self-reporting. (ECF No. 19.1 at 17.) Plaintiff makes no argument, however, that the ALJ did that in the instant hearing decision. Notably, the 2017 ALJ Decision did include as one of the reasons for partially rejecting Dr. Heart's opinion that the opinions "were overly reliant on the claimant's subjective reports." (AT 24.) But that reasoning no longer appears in the ALJ decision presently under review.

Plaintiff then briefly raises two issues with the ALJ's finding that Dr. Heart's opinion regarding plaintiff's physical limitations was inconsistent with the treatment notes and record. (ECF No. 19.1 at 17-18.) First, plaintiff argues that the ALJ overlooked two medical records that show plaintiff experienced tenderness and muscle spasm in her neck, back, and left shoulder. The district court's Remand Order addressed and rejected both of these exact same records as demonstrating error, and that court's reasoning applies equally here. Stockdale, 2019 WL 3859142, at *6. The April 2013 treatment record showing a "normal" neck exam and a "muscle spasm" and "tenderness" in her spine (AT 380) does not show error here either because the ALJ in fact adopted Dr. Heart's lifting and standing limitations into the RFC. (Compare AT 488-89 with AT 598, assigning same limitations of 4 hours of standing, and lifting 20 pounds occasionally and 10 pounds frequently.) The December 2014 chiropractor report reflecting neck, back, and shoulder pain helps no more because—as noted in the Remand Order—subsequent

7

records show that plaintiff's pain improved with treatment. (See AT 447, 448.)

The second issue plaintiff briefly raises regarding Dr. Heart's opinion is that the ALJ erred in failing to consider the fatigue and need for unscheduled breaks that would arise from plaintiff's anemia and IBS impairments, both of which the ALJ found to be severe. (ECF No. 19.1 at 18.) Plaintiff cites no medical records in connection with this undeveloped argument. Further, although Dr. Heart's opinion statement references "fatigue" as one of plaintiff's symptoms and checks a "Yes" box indicating that plaintiff would need to take unscheduled breaks during the workday, Dr. Heart did not answer the accompanying question about how many unscheduled breaks plaintiff would need or otherwise opine on how her fatigue would limit her abilities. (AT 487, 489.) Like the district court in its Remand Order, the undersigned declines to address Dr. Heart's unscheduled breaks finding because of her failure to quantify the number of breaks or provide any details regarding that limitation. See Stockdale, 2019 WL 3859142, at *4 n.2.

Lastly, as her most developed argument, plaintiff argues that the ALJ again failed to give sufficient reasons for rejecting Dr. Heart's opinion that plaintiff would miss more than 4 days of work per month due to her impairments or treatment. (See AT 490.) Initially, the Remand Order did not fault the ALJ for giving legally insufficient reasons for rejecting Dr. Heart's opinion regarding work absences, but rather for failing to address this portion of the opinion at all. See Stockdale, 2019 WL 3859142, at *5, 6. The ALJ's post-remand decision now expressly addresses this portion of Dr. Heart's opinion, finding "no objective evidence that indicates the claimant's physical and mental limitations would result in her missing more than 4 days [of work per month]." (AT 601.) In the following sentences, the ALJ reasoned that plaintiff's mental status examinations had all been "relatively normal except on one occasion[] of flat affect and pressured speech"; and that plaintiff's prescribed treatment had adequately managed her symptoms. (Id.) These are clear and convincing reasons for discounting Dr. Heart's opinion regarding plaintiff's ability to consistently attend work.

### 3. Evaluation of Opinions by Reviewing Physicians

Plaintiff next argues that the ALJ erred by failing to address two of the moderate mental functioning limitations identified by the state agency psychologists, which were part of the reason

for the Remand Order.  (ECF No. 19.1 at 18-19.)  See Stockdale, 2019 WL 3859142, at *7, *10.

Dr. Paula Kresser, a state agency psychological consultant, performed the initial review of plaintiff's disability benefits application and assessed a mental RFC with no mental functioning limitations in understanding and memory, social interaction, or adaptation[7]; but under the umbrella category of "sustained concentration and persistence limitations" Dr. Kresser assessed moderate limitations in four areas: (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; and (4) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  (AT 90–91.)  Another state agency psychological consultant, Dr. C.W. Kang, concurred in these assessments on reconsideration review.  (AT 101, 105–06.)

On appeal from the 2017 ALJ Decision denying benefits, the district court found that the ALJ erred by failing to address or acknowledge Dr. Kresser's and Dr. Kang's findings that plaintiff had moderate limitations in her ability to (1) carry out detailed instructions; and (2) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  Stockdale, 2019 WL 3859142, at *7.  In this appeal, plaintiff argues that the ALJ failed to cure this error.  (ECF No. 19.1 at 19.)  Although the ALJ certainly could have been more explicit in addressing these opinions by the reviewing physicians, this time she incorporated the former into plaintiff's mental RFC and the court can infer sufficient reasons for rejecting the latter.

At the post-remand hearing (unlike at the original hearing) the ALJ heard testimony from a medical expert, clinical psychologist Dr. Joseph Malancharuvil, who reviewed the entire record and observed plaintiff's testimony at the hearing.  (AT 641-42.)  As relevant, Dr. Malancharuvil opined that plaintiff had "mild to moderate" limitations in concentration, persistence, and pace

---

[7]   In addressing the Paragraph B criteria for the Listings, Dr. Kresser assessed "mild" limitations in "Restriction of Activities of Daily Living" and "Difficulties in Maintaining Social Functioning."  (AT 86.)

1   (consistent with the reviewing physicians' opinions); and that she also had mild to moderate
2   limitations in adapting or managing herself, depending on the work of the day (whereas the
3   reviewing physicians assessed no limitation in this area).  (AT 644.)  Based on these limitations,
4   Dr. Malancharuvil concluded that plaintiff was "at least capable of moderately complex task[s] in
5   a somewhat habitual, routine setting" and was precluded from "highly fast-paced work, such as
6   working on a rapid assembly line."  (AT 644-45.)  The ALJ gave "great weight" to
7   Dr. Malancharuvil's opinion and incorporated it into the RFC, which reflects that "[m]entally,
8   [plaintiff] can perform moderately complex tasks on a habitual basis (i.e., she is able to perform
9   semiskilled routine work) in a stable work setting"; and that "[s]he cannot perform fast-paced
10  work, such as assembly line work."  (AT 598, 601.)

11          The ALJ  gave the reviewing physicians' opinions "partial" weight because they "are
12  fairly consistent with the overall medical evidence of record indicating that the claimant is
13  receiving prescribed treatment for her mental impairments; however, based on the testimony of
14  Dr. Malancharuvil, the record supports that the claimant would also have greater limitations in the
15  ability to adapt or manage herself depending on the type of work she is engaging in."  (Id.)  This
16  statement suggests, as the Commissioner argues, that the ALJ simply found plaintiff had more
17  mental limitations than those the reviewing physicians assessed.  (ECF No. 20 at 7.)

18          The argument that the ALJ implicitly incorporated the reviewing physicians' more
19  minimal assessed limitations is borne out in part.  The RFC's inclusion of the limitation to
20  "moderately complex tasks on a habitual basis . . . in a stable work setting" incorporates the
21  reviewing physicians' opinions that plaintiff had moderate limitations in carrying out detailed
22  instructions.  (AT 598.)  An ALJ may synthesize and translate assessed limitations into an RFC
23  assessment without repeating each functional limitation verbatim in the RFC assessment.  Stubbs-
24  Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).  The undersigned is satisfied that
25  the ALJ indeed credited that moderate limitation assessed by the reviewing physicians—although
26  she did not specifically address it—and effectively incorporated it into the RFC.

27          The court cannot confidently say the same for the reviewing physicians' other assessed
28  moderate limitation challenged here:  plaintiff's ability to perform activities within a schedule,

maintain regular attendance and be punctual within customary tolerances.[8] Arguably, the ALJ's decision to limit plaintiff to "moderately complex tasks on a habitual basis . . . in a stable work setting" and to exclude "highly fast-paced work" accommodates any moderate limitation in ability to perform activities within a schedule. However, it does not address the other aspects of regular attendance and punctuality.

Still, two aspects of the record satisfy the court that the ALJ's implicit discrediting of these portions of the reviewing physicians' opinions was supported by substantial evidence. First, at the post-remand hearing, plaintiff's attorney directly asked Dr. Malancharuvil if he agreed with the reviewing physicians' opinion that plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AT 654-55.) Dr. Malancharuvil replied that "the medical records I have available in front of me do not support any such conclusions." (AT 655.) Thus, the court is satisfied that by giving great weight to the entirety of Dr. Malancharuvil's opinion, the ALJ rejected the reviewing physicians' contradicted opinion on plaintiff's moderate limitations in this area—and substantial evidence supported her decision to do so. See Magallanes, 881 F.2d at 755 (court may draw reasonable inferences where it is clear the ALJ relied on facts and evidence contained elsewhere in her opinion).

Second, the ALJ's explanation of her rejection of Dr. Heart's opinion that plaintiff would miss more than 4 days of work per month (AT 601) also suffices as a specific reason for rejecting the state agency consultants' opinion on plaintiff's moderate limitation in work attendance and punctuality. As discussed above, the ALJ gave clear and convincing reasons for rejecting Dr. Heart's opinion on that subject: that plaintiff's mental status exams were almost entirely normal and her symptoms were adequately managed with her prescribed treatment. Although the ALJ should have separately addressed the reviewing physicians' separate opinions on plaintiff's

---

[8] Plaintiff does not argue error with respect to the reviewing physicians' opinions that plaintiff was moderately limited in her ability to (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and (4) maintain attention and concentration for extended periods. Thus, the court does not address them.

ability to attend work—especially given the Remand Order's express directive to do so—these same reasons apply equally to the reviewing physicians' assessment of plaintiff's ability to regularly attend work.  See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").  This, combined with Dr. Malancharuvil's testimony expressly disagreeing with the reviewing physicians' opinion on this subject, satisfies the court that the ALJ's partial rejection of the reviewing physicians' opinion was supported by substantial evidence.

The court is loathe to reward the ALJ's repeated failure to expressly discuss "all of the moderate limitations identified by Dr. Kresser and Dr. Kang," which motivated the Remand Order.  Stockdale, 2019 WL 3859142, at *7, *10.  However, with the ALJ's new analysis of plaintiff's ability to regularly attend work, the crediting of the new opinion by Dr. Malancharuvil, and the incorporation of the assessed instructional limitation into the RFC, the court concludes that the ALJ's decision nonetheless adequately "addresses" the challenged limitations, if just barely.[9]

For these reasons, the court rejects plaintiff's assertion of errors in the ALJ's weighing of the medical opinion evidence.

**B.  The ALJ's Step Four and Step Five Determinations**

The court turns next to plaintiff's combined argument that (1) the ALJ erred at Step 4 by determining that plaintiff could perform her semi-skilled past relevant work; and (2) the ALJ further erred in various ways in reaching her alternative Step 5 determination that plaintiff could

///

---

[9] Plaintiff's only other argument regarding the evaluation of the reviewing physicians' opinions is that the ALJ cited "no objective evidence which is actually inconsistent" with their opinion that plaintiff's concentration abilities limit her to unskilled work.  (ECF No. 19.1 at 19.)  This exact same argument was rejected in the Remand Order because the district court found substantial evidence supporting the ALJ's determination that plaintiff had only mild limitations regarding her attention and concentration abilities.  Stockdale, 2019 WL 3859142, at *7 (citing AT 330, 333, 477, 506).  The undersigned rejects this repeated argument for the same reasons.

also perform other work available in the national economy.[10] (ECF No. 19.1 at 20-22.)

Plaintiff's single-paragraph Step 4 argument is that the state agency reviewing physicians opined that plaintiff's mental impairments limited her to unskilled work—and therefore the ALJ erred by finding she could perform semi-skilled past relevant work. (ECF No. 19.1 at 20.) The premise of this argument is flawed. The agency reviewing physicians did not opine that plaintiff was limited to unskilled work. Rather, in evaluating plaintiff's mental RFC, they assessed the none-to-moderate limitations outlined above. (AT 90-91, 105-06.) No mention of "unskilled" work appears in the mental RFCs assessed at the initial or reconsideration levels—or in the physical RFCs for that matter. What plaintiff appears to be referencing are the separate vocational findings of the non-physician Disability Adjudicators / Examiners at the initial and reconsideration levels regarding plaintiff's ability to perform Other Work. Disability Examiners C. Villanueva (on initial review) and T. Morris (on reconsideration review) answered "Yes" to the question of whether plaintiff was limited to unskilled work because of her impairments, and indicated that based on the reviewing physician's physical RFC assessment, plaintiff's maximum sustained work capability was Sedentary. (AT 92-94, 106-08.)

First, these disability examiners expressly did not make a finding about plaintiff's capacity to perform her past relevant work. (See AT 91 & 106, stating "A finding about the capacity for PRW has not been made" because all potentially applicable Medical-Vocational Guidelines ("Grids") rules would direct a finding of "not disabled" and therefore claimant can adjust to other work.") Second, even assuming they would have found plaintiff limited to "unskilled" work with respect to her past relevant work as well, these are not medical opinions that the ALJ was required to address or incorporate in her ultimate RFC and subsequent determinations. See Ramsdell-Longnecker v. Astrue, 2011 WL 3897852, at *6 (W.D. Wash. Aug. 5, 2011) (discussing ALJ error in referring to opinion of non-physician disability evaluator as an opinion of a "State Agency medical consultant or "State Agency reviewing physician"), report and

---

[10] Plaintiff appears to have made similar arguments in her appeal of the 2017 ALJ Decision. The district court declined to address these arguments in light of its decision to remand the case for the ALJ to further analyze the medical evidence and make any adjustments to the RFC assessment. Stockdale, 2019 WL 3859142, at *10 n.5.

1 recommendation adopted, 2011 WL 3904108 (W.D. Wash. Sept. 6, 2011).  The ALJ was free to independently weigh the record evidence in determining the level of vocational skill to assess in plaintiff's RFC.  The ALJ ultimately determined that plaintiff was "able to perform semi-skilled routine work," conducting "moderately complex tasks on a habitual basis . . . in a stable work setting."  (AT 598.)

At the post-remand hearing, the ALJ posed a hypothetical to the Vocational Expert ("VE") with all of the exact same limitations that eventually comprised the ultimate RFC.  (AT 662-63.)  The VE asked whether the ALJ meant to restrict the hypothetical individual to "unskilled work" or "can they do complex tasks . . . ?"  (AT 663.)  The ALJ responded that

> semi-skilled may be the way to classify it, but what I'm contemplating, and my understanding was the individual be capable of doing moderately complex tasks.  So, they're not necessarily limited to simple tasks, but it would need to be in a setting where there would be limited change.  It would be a routine setting where the type of more complex tasks they were doing would, kind of, be repetitive; habitual . . . .  Habitually more complex."

(AT 664.)  In answer to the hypothetical, as clarified, the VE testified that such an individual would be able to perform plaintiff's past relevant work as an outpatient admitting clerk and as an insurance clerk.  (AT 665, also finding that plaintiff's past relevant work was "semi-skilled and sedentary.")  This VE testimony constitutes substantial evidence supporting the ALJ's Step 4 determination that plaintiff could perform her past work in these same occupations.  (AT 602-03.)  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (VE testimony in response to a complete hypothetical constitutes substantial evidence); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his rights to rely solely on the vocational expert's testimony."); see also Maxwell v. Saul, 840 F. App'x 896, 898 (9th Cir. 2020) ("In general, a VE's testimony may be substantial evidence on its own to support a nondisability finding.") (citing Ford v. Saul, 950 F.3d 1141, 1160 (9th Cir. 2020)).

Accordingly, the ALJ did not err in finding plaintiff not disabled at Step 4, and the court need not reach the ALJ's alternative Step 5 determination.

///

///

## IV. CONCLUSION

For the above reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED;
2. The Commissioner's cross motion (ECF No. 20) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court shall issue judgment in the Commissioner's favor and CLOSE this case.

Dated: August 25, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

stoc.0504